[Cite as *In re A. F.*, 2019-Ohio-5433.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: A.F. | : | JUDGES: |
| Dependent Child | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | |
| | : | Case No. 19-CA-73 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Licking County Court of Common Pleas, Juvenile Division, Case No. F2017-0458 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | December 30, 2019 |

APPEARANCES:

For Appellee, LCJFS:

WILLIAM C. HAYES
LICKING CO. PROSECUTOR
ANDREW P. ROWAN
20 S. Second St., 4th Floor
Newark, OH 43055

Guardian Ad Litem:
JANET STREMSKI
109 Mimosa Drive
Pataskala, OH 43058

For Appellant Mother:

JERMAINE COLQUITT
33 W. Main St., Suite 109
Newark, OH 43055

Attorney for Minor Children:
ADAM JOHNSON
25 E. Waterloo St., Ste. 106
Newark, OH 43055

*Delaney, J.*

{¶1}  Appellant S.C. ("Mother") appeals from the July 18, 2019 Judgment Entry of the Licking County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting the motion for permanent custody of appellee Licking County Job & Family Services, Children Services Division (the "Agency").

{¶2}  The instant appeal is related to, but not consolidated with, In the Matter of B.F., Dependent Child, 5th Dist. Licking No. 19-CA-74.

**FACTS AND PROCEDURAL HISTORY**

{¶3}  Mother has two minor children, A.F. and B.F.  At the time of the evidentiary hearing, A.F. was 11 years old and B.F. was almost 9 years old.  The children are presently placed together in a foster home with no plans to adopt.  The children do not have special needs.

{¶4}  Father is B.F., Sr., who has not appeared throughout this action.  His whereabouts are unknown and at the time of the evidentiary hearing, active warrants existed for his arrest.  Father was served by publication.

*Mother's unsuccessful progress on case plan*

{¶5}  This family came to the attention of the Agency on June 23, 2017.  An ongoing caseworker was assigned and identified concerns of substance abuse and domestic violence with Mother.  Specifically, Mother was the victim of domestic violence perpetrated by her paramour.[1]  The case plan identified the following issues for Mother: substance abuse, unemployment, mental health, poor parenting, and domestic violence.

---

[1] Mother's paramour was at first included in the Agency's case plan, but the case plan was later amended to exclude him.

{¶6} Mother at first seemed to do well on the case plan. She claimed she was no longer in a relationship with the former paramour, who had subjected her to domestic violence and substance abuse. Mother completed an AOD evaluation and was given further recommendations to pursue with LAPP. Mother failed to complete required mental health and domestic violence assessments, however.

{¶7} The caseworker learned Mother was not forthcoming about her relationship status; she was still involved with the paramour, who was charged with domestic violence against her for an incident which occurred after the relationship purportedly ended.

{¶8} Mother told the caseworker she lived alone, but upon unannounced visits to her residence, unidentified men would come to the door and state Mother was not home. One of these men identified himself as a maintenance man, but the same man was present on a different home visit, and was found alone in the home with his shirt off. The caseworker also observed men described as friends drinking alcoholic beverages in the home and determined they were not suitable to be around the children.

{¶9} Mother missed scheduled appointments with the caseworker. Upon unannounced visits to the residence, Mother's car was present but no one answered the door.

{¶10} Mother did not alleviate the Agency's concerns with her substance abuse, despite initially attending counseling and testing clean. Mother admitted she relapsed with methamphetamine and could not or would not admit when her last use was. Mother stopped attending substance abuse treatment and was discharged for failure to attend. She tested positive for methamphetamine and sometimes refused to screen altogether. She attended visitation with the children visibly under the influence.

{¶11} Mother did obtain and maintain employment, but blamed her work hours for the inability to attend substance abuse and mental health treatment. Mother maintained housing throughout the case, but the residence was a concern due to the unidentified men noted supra and because Mother did not have separate bedrooms for the children.

*Maternal Grandfather requests home study*

{¶12} At the outset of the Agency's involvement with the family, the caseworker asked for possible kinship placements and Mother offered none, stating no one was willing or available to care for the children. When it became evident that Mother would not successfully complete the case plan and the Agency would seek permanent custody, Maternal Grandfather approached the Agency and requested a home study.

{¶13} The Agency's kinship coordinator testified that she met with Maternal Grandfather twice. He completed the necessary paperwork for a home study and submitted his fingerprints for a background check. Maternal Grandfather has no criminal history and his home was found to be appropriate. He passed the required fire inspection.

{¶14} At the evidentiary hearing, Maternal Grandfather testified he was willing to keep the children long-term and understood the need to provide for their daily care. He testified that he has worked at his present employment for over 25 years and plenty of sick and vacation time to use if he can't find childcare.

{¶15} The Agency had significant concerns with Maternal Grandfather, however, excluding him from consideration for placement. Maternal Grandfather was hesitant when the caseworker brought up the Statement of Understanding delineating that he was responsible for raising the children to 18 years of age. The kinship coordinator testified that Maternal Grandfather became flustered when he realized that proposed legal custody

was long-term. Workers from the Agency were concerned that Maternal Grandfather minimized Mother's failures on her case plan and didn't understand that he could not allow Mother around the children unsupervised. He told Agency employees that Mother was getting her substance abuse problem under control and would be able to take the children back in two to three months. At the evidentiary hearing, he testified that he was not aware of the extent of Mother's substance abuse, and Mother testified that she lied to him about it.

{¶16} The Agency was also concerned that Maternal Grandfather worked from approximately 5:30 a.m. to 6:30 p.m. on weekdays. Although he had a daycare facility in place to help with the children, he did not have a plan to cover transportation of the children or a backup plan if they were sick and unable to attend school or daycare. Maternal Grandfather indicated he could ask a neighbor for help, but did not know the neighbor's name. Maternal Grandfather was told to work out a plan for childcare contingencies and to report back to the Agency, but he failed to do so. When asked why she didn't contact him, the Agency worker explained that it was Maternal Grandfather's responsibility to follow through on instructions.

{¶17} The guardian ad litem testified she made contact with Maternal Grandfather and she did not support giving him legal custody of the children. He could not articulate his role as protector for the children and he said Mother was clean and ready for the children to come home to her. He blamed the Agency for keeping the children from Mother. The G.A.L. further noted that the children never told her they wanted to live with Maternal Grandfather; they repeatedly expressed that they wanted to go home to Mother.

{¶18} The children were placed together in foster care. Their first foster family unexpectedly told the Agency that they didn't want to foster any longer. The children were then placed, together, with a second foster family. This is not a foster-to-adopt placement. There are no other potential kinship placements.

{¶19} On June 23, 2017, complaints were filed asserting the children were dependent due to issues of substance abuse and domestic violence. A temporary orders hearing was held the same day, and the children were placed in the emergency shelter care custody of the Agency. Adjudicatory and dispositional hearings were held on August 25, 2017. The magistrate conducted an in-camera interview of the children with the G.A.L. present. In a magistrate's decision filed August 25, 2017, the children were found to be dependent and were placed in the temporary custody of the Agency. The case plan filed on July 7, 2017 was adopted by the trial court at the time of disposition; an amended case plan was filed on August 14, 2017.

{¶20} The Agency filed a motion to modify disposition on May 4, 2018, seeking a 6-month extension of temporary custody. The motion was granted by judgment entry on May 29, 2018, and was set to expire on December 23, 2018.

{¶21} On November 9, 2018, the Agency filed a motion for permanent custody alleging the children could not be placed with the parents within a reasonable time. On November 28, 2018, Mother filed a motion for legal custody of the children to be placed with Maternal Grandfather.

{¶22} The motions for permanent custody and legal custody proceeded to evidentiary hearing on March 13, 2019. On June 28, 2019, the magistrate granted the motion for permanent custody to the Agency and overruled the motion for legal custody

to Maternal Grandfather. Mother timely objected to the magistrate's decision. On July 18, 2019, the trial court approved and adopted the magistrate's decision, denied Mother's objections, and placed A.F. and B.F. in the permanent custody of the Agency.

{¶23} Mother now timely appeals from the decision of the trial court.

{¶24} Mother raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶25} "I. THE TRIAL COURT ERRED BOTH IN DENYING TODD CAMPBELL'S LEGAL CUSTODY MOTION AND IN GRANTING THE LICKING COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES PERMANENT CUSTODY OF A.F. AND B.F."

{¶26} "II. THE TRIAL COURT ERRED IN FINDING THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY."

**ANALYSIS**

**I., II.**

{¶27} Mother argues the trial court erred in granting permanent custody to the Agency and in denying Maternal Grandfather's motion for legal custody. We disagree. Mother's two assignments of error are related and will be addressed together.

{¶28} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the

extent of such certainty, as required beyond a reasonable doubt, as in criminal cases."
*Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*,
18 Ohio St.3d 361, 481 N.E.2d 613 (1985).  In reviewing whether the trial court based its
decision upon clear and convincing evidence, "a reviewing court will examine the record
to determine whether the trier of facts had sufficient evidence before it to satisfy the
requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60
(1990); *See also, C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d
578 (1978). If the trial court's judgment is "supported by some competent, credible
evidence going to all the essential elements of the case," a reviewing court may not
reverse that judgment. *Schiebel*, 55 Ohio St.3d at 74, 564 N.E.2d 54.

{¶29} Moreover, "an appellate court should not substitute its judgment for that of
the trial court when there exists competent and credible evidence supporting the findings
of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the
weight to be given the evidence are primarily for the trier of fact. As the court explained
in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984):  The
underlying rationale of giving deference to the findings of the trial court rests with the
knowledge that the trial judge is best able to view the witnesses and observe their
demeanor, gestures and voice inflections, and use these observations in weighing the
credibility of the proffered testimony.  Moreover, deferring to the trial court on matters of
credibility is "crucial in a child custody case, where there may be much evident in the
parties' demeanor and attitude that does not translate to the record well." *Davis v.
Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also, In re: Christian*,

4th Dist. Athens App. No. 04CA10, 2004-Ohio-3146; In re: C. W., 2nd Dist. Montgomery App. No. 20140, 2004-Ohio-2040.

{¶30} We set forth a trial court's analysis of a permanent custody motion in *In the Matters of: A.R., B.R., W.R.,* 5th Dist. Stark Nos 2018CA00091, 2018CA00097, 2018CA00098, 2019-Ohio-389, paraphrased as follows:

When deciding a motion for permanent custody, a trial court must follow the guidelines for are provided in R.C. 2151.414. R.C. 2151.414(A)(1) requires the trial court to schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

Following a hearing on the motion, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children

services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) requires the trial court to consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶31} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

*R.C. 2151.414(B)(1)(d)*

{¶32} The trial court concluded that R.C. 2151.414(B)(1)(d) applied to the children, to wit, they were in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period. The children were placed in the temporary custody of the Agency on August 17, 2017, twenty months before the hearing

took place.  We find the trial court's judgment on this point is supported by competent, credible evidence. *Schiebel*, 55 Ohio St.3d at 74, 564 N.E.2d 54.

*Best interest of the children*

{¶33} Mother does not challenge the trial court's finding pursuant to R.C. 2151.414(B)(1)(d) but argues the trial court's findings regarding the best interest of the children are not supported by clear and convincing evidence.

{¶34} If the child is not abandoned or orphaned, as is the case here, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶35} Relevant here, R.C. 2151.414(E)(1) states:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and

rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶36} We find appellee presented sufficient competent, credible evidence to demonstrate that the children cannot or should not be placed with Mother, as notwithstanding reasonable efforts on behalf of the Agency, Mother failed to remedy the problems that initially caused their removal from the home. Mother put minimal effort into her case plan. She failed to successfully complete any substance abuse treatment, continued to use methamphetamine, and failed to engage in mental health counseling. Mother testified she loves the children and wants to care for them, but she has not established the ability to do so. Mother's problems with methamphetamine are not resolved. Mother's willingness to attend visitation with the children under the influence of methamphetamine speaks to her priorities.

{¶37} Meanwhile, the children's needs are being addressed by the foster family. The children deserve permanency and Mother is not presently in a position to provide for their needs.

{¶38} Based on the foregoing, the trial court's findings that Mother failed to remedy the conditions that existed at the time of the children's removal, that the children could not be placed with either parent in a reasonable amount of time, and should not be placed with either parent are not against the manifest weight of the evidence, and are supported by sufficient evidence. We further find the trial court's finding that the best interests of the children were served by a grant of permanent custody to the Agency is not against the manifest weight of the evidence and is supported by sufficient evidence.

*Relative placement not appropriate*

{¶39} Mother further argues that the trial court erred by not placing A.F. and B. in the legal custody of Maternal Grandfather.  R.C. 2151.412(G), in relevant part, states:

> In the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern. The agency and the court shall be guided by the following general priorities:
>
> (5) If the child cannot be placed with either of the child's parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable non-relative is willing to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency.

{¶40} The child being placed in a permanent situation that fosters growth, stability, and security serves the child's best interests. *In re Adoption of Ridenour,* 61 Ohio St.3d 319, 324, 574 N.E.2d 1055 (1991). Accordingly, a court is not required to favor a relative if, after considering all the factors, it is in the child's best interest for the agency to be granted permanent custody. *In re A.C.,* 12th Dist. Butler No. CA 2006–12–105, 2007–Ohio–3350, ¶ 17; *In Re Dylan B., Luna B,* 5th Dist. Stark No. 2007–CA–00362, 2008–Ohio–2283, ¶ 66; *In re Turner,* 5th Dist. Stark No. 2006CA00062, 2006–Ohio–4906, ¶ 35; *In re Perry,* 4th Dist. Vinson Nos. 06 CA 648, 06 CA 649, 2006–Ohio–6128, ¶ 62.

{¶41} The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors; there is not one element that is given greater weight than the others. *In re Schafer,* 11 Ohio St.3d 498, 2006–Ohio–5513, 857 N.E.2d 532, ¶ 56. *Schafer* notes a trial court's statutory duty in determining whether it is in the best interest of a child to grant permanent custody to an agency does not include finding by clear and convincing evidence that no suitable relative was available for placement. "The statute requires a weighing of all relevant factors, and the trial court did that in this case. R.C. 2151.414 requires the court to find the best option for the child once a determination has been made pursuant to R.C. 2151.414(B)(1)(a) through (d). The statute does not make the availability of a placement that would not require a termination of parental rights an all-controlling factor. The statute does not even require the court to weigh that factor more heavily than other factors." *Schaeffer,* supra*,* 2006–Ohio–5513 at ¶ 64; *In Re Dylan B., Luna B,* supra, at ¶ 67; *In re Avon,* 5th Dist. Tuscarawas No. 2006–AP–09–0051, 2007–Ohio–1431, ¶ 26.

{¶42} Based upon the evidence, the court properly denied the motion for a change of legal custody to Maternal Grandfather. There was sufficient evidence submitted at the hearing to call into question Maternal Grandfather's ability to provide a long term, stable placement for the children. As noted supra, Mother's ongoing substance abuse is the biggest roadblock to her ability to parent, although not the only one. Maternal Grandfather's unwillingness or inability to recognize the extent of the substance abuse creates a concern that he is unwilling to keep Mother from the children. Upon our review of the record, we concur with the trial court that the best interests of the children cannot be served by placement with Maternal Grandfather.

{¶43} For these reasons, we find that the trial court did not abuse its discretion in denying Maternal Grandfather's motion for custody.

{¶44} We further find that the trial court's decision that permanent custody be granted to the Agency was in the children's' best interest and was not against the manifest weight or sufficiency of the evidence.

{¶45} Mother's first and second assignments of error are overruled.

## CONCLUSION

{¶46} Mother's two assignments of error are overruled and the judgment of the Licking County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.